IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CHARLIE GRANT STEPHENS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 7:18-cv-00376 |
| ) | |
| LISA FERGUSON, et al. ) | By: Elizabeth K. Dillon |
| ) | United States District Judge |
| Defendants. ) | |

**MEMORANDUM OPINION**

*Pro se* plaintiff Charlie Grant Stephens filed this action under 42 U.S.C. § 1983 alleging that he received inadequate medical treatment while incarcerated at New River Valley Regional Jail (NRVRJ) in violation of the Eighth Amendment and that various NRVRJ staff retaliated against him for filing a lawsuit in this court and mailing a complaint letter to Superintendent Winston in violation of the First Amendment.[1] Defendants Lisa Ferguson, Etthan Miller, Gregory Winston, Patricia Boblett, and John Bowman have moved to dismiss Stephens' complaint or, in the alternative, for summary judgment. (Dkt. Nos. 22, 38.)[2] Defendants have also filed motions for protective orders, requesting the court stay discovery pending the court's decision on their dispositive motions. (Dkt. Nos. 50, 53.) Because defendants rely on evidence outside the pleadings in support of their motions to dismiss—namely, their own declarations—the court will treat these

---

[1] Stephens did not expressly reference the First Amendment in his complaint. However, given that the filing of his lawsuit implicates the First Amendment right to petition the government, *see Perry v. JPAY, Inc.*, No. 7:16-cv-00362, 2018 WL 1309743, at *9 (W.D. Va. Mar. 13, 2018), the court construes this portion of his complaint as asserting a claim under § 1983 for a violation of his First Amendment rights.

[2] Stephens did not originally include Bowman as a defendant in this case. All defendants but Bowman moved to dismiss Stephens' complaint on October 26, 2018. Stephens then amended his complaint on November 6, 2018, to add Bowman, prompting the second motion to dismiss. The court will consider these motions collectively herein.

motions as summary judgment motions, which will be granted.[3]  Accordingly, the court will also deny as moot defendants' motions for protective orders.

I. BACKGROUND

Stephens' complaint centers around a series of interactions he had with NRVRJ's medical staff after experiencing swollen and painful gums and dental pain apparently resulting from infected and decayed wisdom teeth.  (Compl. 5, Dkt. No. 1; Ferguson Decl. ¶ 8, Dkt. No. 23-1.)  When Stephens complained to medical staff about his pain on May 2, 2018, he was ordered 600 mg of ibuprofen twice daily.  On May 4, medical staff evaluated Stephens and ordered an antibiotic to treat his infection.  Because Stephens reported at intake that he was allergic to amoxicillin, medical staff instead prescribed clindamycin.  According to Lisa Ferguson, Health Services Administrator and director of the NRVRJ medical department, Stephens received his first dose of clindamycin the next evening, May 5.  (Ferguson Decl. ¶ 8.  *But see* Dkt. No. 23-1, at 15 (indicating Stephens received his first dose of clindamycin on May 4); Compl. 3 (alleging that Stephens did not receive clindamycin until May 7).)

On May 10, Stephens reported feeling "stopped up w/ [a] sore throat and difficulty breathing."  According to Stephens, he sent a sick call the next day stating "I believe I'm allergic to my antibiotic.  Having symptoms as with Amoxicillin.  Whole body aches, dizzy, no appetite.  Symptom's [sic] started few days after starting meds."  (Compl. 3–4.)  However, the medical records and staff declarations indicate Stephens did not report his alleged allergy until later in July.  (Ferguson Decl. ¶¶ 16–17; Honaker Decl. ¶ 7, Dkt. No. 23-3; Miller Decl. ¶ 6, Dkt. No. 23-2.)

---

[3] Along with his response to defendants' first motion to dismiss, Stephens filed a letter to the court on January 4, 2019, stating that he would submit exhibits for this case "next week."  (Dkt. No. 37-1.)  Stephens did not file any exhibits, and on January 25, 2019, the court ordered Stephens to submit the referenced exhibits within fourteen days.  (Dkt. No. 48.)  Stephens has not since filed any exhibits.

2

Stephens refused to take his clindamycin that evening and possibly the next morning[4] but did not refuse any other doses and otherwise took the prescription until it was complete.[5] (Dkt. No. 23-1 at 15; Honaker Decl. ¶ 6.)

Stephens began having issues with his wisdom teeth again on June 17, 2018, at which time he requested an antibiotic other than clindamycin. Medical staff placed Stephens on the "sick call list" that day. (Compl. 5; Ferguson Decl. ¶ 13.) Stephens alleges that he was not prescribed an antibiotic because he was scheduled to see a dentist on June 25. (Compl. 5.) However, Ferguson states that Stephens refused to go to his sick call appointment and never had a dentist appointment scheduled for June 25. (Ferguson Decl. ¶ 14.)

On July 12, Stephens was again prescribed an antibiotic related to his wisdom teeth. According to his records, "[h]is right and left upper wisdom teeth were decayed, and his gums and the right side of his cheek were swollen." (Ferguson Decl. ¶ 15.) Stephens alleges that he was offered only amoxicillin and clindamycin and "had no choice but to take it." (Compl. 6.) On July 18, after having taken the antibiotic for several days, Stephens reported having an allergic reaction to the clindamycin. Medical staff asked what allergic symptoms Stephens was experiencing, and Stephens did not respond. (Ferguson Decl. ¶ 16; Compl. 6.) That day, Stephens mailed a letter to Superintendent Gregory Winston "explaining the situation with medical." (Compl. 8–9.)

NRVRJ medical staff stopped Stephens' clindamycin prescription on July 19, and no alternative antibiotic was prescribed. (Compl. 6; Dkt. No. 23-1 at 17.) According to Ferguson, the reason Stephens was not offered a different antibiotic is that nurses at NRVRJ may order

---

[4] Lisa Honaker's declaration states that Stephens did not refuse his antibiotic any time other than May 11 (Honaker Decl. ¶ 6); however, the treatment record provided by Lisa Ferguson indicates that Stephens may also have refused his clindamycin the following morning. (Dkt. No. 23-1 at 15.)

[5] Stephens' allegations paint a slightly different picture. He alleges that on May 11 he was "taken off" the clindamycin. He further states that on May 12 he refused his morning dose of the antibiotic and that, during evening medication administration, medical staff tried to give him an increased dosage. Stephens alleges that he "tried to refuse on grounds of allergic reactions but nurse wouldn't allow it." (Compl. 4–5, 8.)

3

medications on the jail's dental protocol—amoxicillin or clindamycin—but do not have authority to prescribe other medications. On July 19, recognizing that Stephens had no other antibiotic options under NRVRJ's dental protocol, Ferguson requested an examination by the NRVRJ nurse practitioner, who could prescribe a different antibiotic. (Ferguson Decl. ¶ 17.) On July 23, nurse practitioner Mary Cox saw Stephens and explained that the symptoms he experienced on clindamycin were sensitivities and not allergies. She nonetheless added clindamycin to his allergy list and prescribed ibuprofen until he could see the NRVRJ dentist on August 3.[6] (Compl. 7; Cox Decl. ¶¶ 4–5, Dkt. No. 23-4.)

Stephens alleges that after he met with NRVRJ's nurse practitioner, Ferguson

> confronted Mr. Stephens about his letter to facility Superintendent concerning her professional conduct. L.F. had hostile attitude toward Mr. Stephens. Once she informed me her notes about me were going to the jails attorney's [sic], Mr. Stephens informed her this conversation was over, he had nothing further to say.
>
> Ms. Ferguson then produced a digital recorder from her pocket and said she recorded our conversation. I was never made aware of this before hand and it was only Ms. Ferguson and Mr. Stephens in Exam Room 1.
>
> Mr. Stephens returned to holding cell where Ms. Ferguson again engaged him, provoking him.

(Compl. 7–8.)[7] According to Superintendent Winston, Ferguson spoke to Stephens at Winston's request after Winston acknowledged that he lacked the medical training necessary to address the

---

[6] In his complaint, Stephens also alleges that his ibuprofen prescription was "discontinued." Ferguson explains in her declaration that Stephens was not taken off his prescription; rather, the prescription ended and could not be renewed until Stephens met with NRVRJ's nurse practitioner. Cox prescribed ibuprofen again on July 23, and Stephens was administered ibuprofen later that day. (Ferguson Decl. ¶¶ 18–19.)

[7] In her declaration, Ferguson recalls that on July 24 Stephens stated "I complained about you putting me on a medication that I'm allergic to." (Ferguson Decl. ¶ 21.) Ferguson states that she tried to have a conversation with Stephens regarding his alleged allergy and treatment, at which time Stephens "began yelling expletives at [her] and calling [her] names." (*Id.*) In response, Ferguson told Stephens she was recording the conversation; however, she states that she "never actually recorded any conversation with inmate Stephens." (*Id.* ¶ 22.)

4

concerns Stephens brought up in his July 18 letter. (Winston Decl. ¶¶ 3–4, Dkt. No. 23-6; *see also* Ferguson Decl. ¶ 20.)

Stephens ultimately had his wisdom teeth removed on August 3, 2018. (Ferguson Decl. ¶ 23; Dkt. No. 23-1 at 12.)

Nonetheless, Stephens filed this action seeking $5.2 million in damages for "physical/emotional/mental strain and jeopardy of life/health." (*Id.* at 2.) Specifically, he alleges that Ferguson acted with deliberate indifference to a serious medical issue in violation of the Eighth Amendment. He further alleges that Etthan Miller, a nurse practitioner at NRVRJ, increased his clindamycin prescription even after he became aware of Stephens' allergy, and that Superintendent Gregory Winston retaliated against Stephens by forwarding his letter to Ferguson.

On August 29, 2018, Stephens filed his first amended complaint which adds Patricia Boblett as a defendant. Stephens asserts that Boblett "refused to return the original 'Prison Trust Account Report' provided by this Court." In doing so, he claims Boblett is retaliating against him by "trying to hinder any legal proceedings/deadlines I may have." (First Am. Compl. ¶¶ 1–2, Dkt. No. 10.) According to Boblett, part of her job as Director of Inmate Accounts at NRVRJ is to complete these forms as requested by the court and return them to the court. She notes that "[t]o the best of [her] knowledge, in this case, the Court accepted the trust account form that I provided to inmate Stephens. I have not received any information from Stephens or the Court to suggest otherwise." (Boblett Decl. ¶¶ 5–11.)

Stephens filed a second amended complaint on September 10, 2018, in which he added Deputy Superintendent John Bowman as a defendant. According to Stephens, Bowman retaliated against him by threatening disciplinary action if Stephens continued his attempts to obtain his original "Prison Trust Account Report." (Second Am. Compl. ¶ 1, Dkt. No. 12.) Stephens states that after he received a "request form pertaining to [the] legal form that Defendant Boblett refuses

5

to return, Deputy Superintendent Bowman . . . replied threatening Plaintiff with disciplinary actions if he mentioned the form again." (*Id.*)

On November 1, 2018, Stephens filed his third amended complaint, increasing the damages sought to $25 million.

II. ANALYSIS

**A. Motion to Dismiss or for Summary Judgment**

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–63 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the nonmoving party." *Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano*, 521 F.3d at 302. *Pro se* complaints are afforded a liberal construction. *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006).

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is "genuine" if sufficient evidence favoring

the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248–49.

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), 56(e). All inferences must be viewed in a light most favorable to the non-moving party, but the nonmovant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

**B. Lisa Ferguson**

Stephens' complaint states that "Lisa Ferguson has failed to make sure her staff is giving adequate medical treatment. Ms. Ferguson has exhibited negligence in performing her duties, as well as violating [HIPAA] regulations." (Compl. 8.) As a preliminary matter, to the extent Stephens suggests Ferguson violated his Eighth Amendment rights through her alleged negligence or HIPAA violations, Stephens has failed to state a claim. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) ("Negligence or malpractice in the provision of medical services does not constitute a claim under § 1983."); *Scott v. Blue Ridge Reg'l Jail Auth.*, No. 7:06cv000368, 2006 U.S. Dist. LEXIS 51387, at *3 n.3 (W.D. Va. July 27, 2006) ("[T]here is no general fundamental right to privacy in personal medical information, thus even if [the plaintiff's] medical history was relayed to other parties by jail personnel, this fails to raise a claim of constitutional magnitude.").

To the extent Stephens argues Ferguson was deliberately indifferent or retaliated against Stephens for filing his lawsuit, his claims also fail.

7

1. **Eighth Amendment**

"It is beyond debate that a prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment." *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019). To demonstrate deliberate indifference, an inmate must show that (1) he has a medical condition that has been "diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention" and (2) the defendant "had actual knowledge of the plaintiff's serious medical needs and the related risks, but nevertheless disregarded them." *Id.* at 356–57. The first component is an objective inquiry and the second is subjective. *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017). The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer v. Brennan*, 511 U.S. 825, 839–40 (1994). "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). Importantly, "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright*, 766 F.2d at 849.

There are two medical concerns at issue here: first, Stephens' broken wisdom teeth and the related infection, swelling, and pain; and, second, his alleged allergic reaction to clindamycin. As to the first, even assuming Stephens' infection was a serious medical condition, he has failed to show that Ferguson or other members of the medical staff at NRVRJ were deliberately indifferent to Stephens' medical needs. Stephens alleges that he told Ferguson of his dental pain on May 2 and that, on the same date, he was ordered 600 mg of ibuprofen to be taken twice daily. (Compl. 3.) Ferguson also scheduled an appointment for Stephens to be seen by medical staff on May 4, after which Stephens was prescribed an antibiotic. (Dkt. No. 23-1, at 14.) After Stephens complained of tooth pain a second time on June 17, another examination was scheduled, but Stephens refused to

8

attend. (Ferguson Decl. ¶¶ 13–14; Dkt. No. 23-1, at 14.) Stephens ultimately had his wisdom teeth removed on August 3. Although Stephens likely experienced pain and discomfort during this three-month ordeal, the record indicates that Ferguson and the medical staff at NRVRJ timely and appropriately responded to his complaints by prescribing ibuprofen to alleviate pain, treating his infection with antibiotics, and ultimately removing Stephens' wisdom teeth.

Regarding Stephens' claim that Ferguson and the medical staff ignored his allergy to clindamycin, Stephens has failed to identify either a serious medical issue or deliberate indifference. Stephens' complaint alleges that he was "stopped up w/ [a] sore throat and difficulty breathing," and that he was achy, dizzy, and had no appetite. (Compl. 3–4.) According to NRVRJ medical staff, Stephens' symptoms resembled "flu or cold symptoms," or "sensitivities," not symptoms of an allergic reaction. (*See* Ferguson Decl. ¶ 10 ("Allergic reactions to medication presents [sic] themselves in hives, rash, or in extreme cases, anaphylactic shock. Stephens did not report those symptoms."); Cox Decl. ¶ 4 ("Stephens did not show signs of an allergy to clindamycin. I advised Stephens that his reported symptoms were sensitivities and not a true allergy."); Honaker Decl. ¶ 7 ("At no time did I observe symptoms from Stephens that were indicative of an allergic reaction.").) The Fourth Circuit has found that similar symptoms—"fever, body aches, sinus congestion, and sore throat"—do not constitute a "serious medical need." *Hall v. Holsmith*, 340 F. App'x 944, 947, 947 n.3 (4th Cir. 2009).

Even if Stephens' purported allergy constituted a serious medical issue, Stephens has failed to establish deliberate indifference. Stephens' medical records indicate that medical staff learned of his alleged allergy on July 19, at which time Ferguson put his clindamycin prescription on hold and scheduled an examination for Stephens to see a nurse practitioner.[8] (Dkt. No. 23-1, at 13, 17; *see*

---

[8] As stated above, Stephens' complaint alleges that he first reported his allergy to medical staff on May 11. (Compl. 4.) However, this allegation is unsupported by the record in this case, including Stephens' medical record at NRVRJ. Even accepting Stephens' allegations as true, this fact would not overcome the lack of a serious medical need.

9

*also* Ferguson Decl. ¶ 17 ("July 19, 2018 was the first time I had any knowledge of Stephens' alleged reaction to clindamycin. I immediately put the clindamycin prescription on hold.").) At best, Stephens has alleged a difference of opinion with his medical provider, which is not actionable under § 1983. *Wright*, 766 F.2d at 849. Accordingly, Stephens has not identified a genuine issue of material fact with regard to his Eighth Amendment claim against Ferguson.[9]

### 2. Retaliation

Although Stephens did not assert a claim of retaliation against Ferguson in his complaint or amended complaints, the briefs filed by Stephens and defendants have nonetheless addressed potential retaliation by Ferguson.[10] In light of the parties' discussion, the court will give Stephens the benefit of the doubt and address any potential retaliation claim against Ferguson briefly below.

"Retaliation by a public official for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983, even if the act, when taken for different reasons, would have been proper." *Am. Civil Liberties Union of Md. v. Wicomico Cty., Md.*, 999 F.2d 780, 785 (4th Cir. 1993). "In the prison context, we treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition retaliatory in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)). A plaintiff therefore "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams*, 40 F.3d at 75. "[B]are assertions of retaliation do not establish a claim of constitutional dimension."

---

[9] Although it is unclear from his complaint, there is some indication that Stephens seeks to hold Ferguson liable in her supervisory capacity. However, because Stephens has failed to establish an underlying constitutional violation, any supervisor-liability claim must also be dismissed. *See Doe v. Rosa*, 664 F. App'x 301, 303 (4th Cir. 2016) (recognizing that under § 1983, "[t]here can be no supervisory liability when there is no underlying violation of the Constitution").

[10] On page nine of his complaint, Stephens states that "Winston put Mr. Stephens in a hostile environment which made him a victim of retaliation." (Compl. 9.) Presumably, the parties read this to say that after Winston passed Stephens' letter along to Ferguson, Ferguson retaliated against Stephens for his complaint about the medical care he was receiving.

10

*Id.* Instead, "an inmate must come forward with specific evidence 'establish[ing] that but for the retaliatory motive, the complained of incident . . . would not have occurred.'" *Brown v. Ratlidge*, No. 7:16-cv-00303, 2017 WL 4404248, at *7 (W.D. Va. Sept. 29, 2017) (quoting *Brizuela v. Immigration Ctrs. of Am.*, No. 1:15cv1662, 2016 WL 7173783, at *4 (E.D. Va. Dec. 8, 2016)).

"A plaintiff seeking to assert a § 1983 claim on the ground that he experienced government retaliation for his First Amendment-protected speech must establish three elements: (1) his speech was protected, (2) the alleged retaliatory action adversely affected his protected speech, and (3) a causal relationship between the protected speech and the retaliation." *Raub v. Campbell*, 785 F.3d 876, 885 (4th Cir. 2015); *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994) (summarily dismissing retaliation claim as insufficient because it consisted of merely conclusory allegations and no facts to show retaliatory motivation). "A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of [the protected] rights." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005). To prove causation, an inmate must point to evidence that supports a reasonable inference that the defendant took action because of the inmate's exercise of a constitutionally protected right. *Adams*, 40 F.3d at 75. He must establish that the exercise of his right was the "but for" cause of the alleged adverse action. *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 318 (4th Cir. 2006).

To the extent Stephens claims that his confrontation with Ferguson on July 23 was retaliation for his complaint letter to Winston, he has failed to establish retaliatory motive. Both Ferguson and Winston assert that Winston asked Ferguson to speak with Stephens about his medical concerns. Winston further explained that because he has "no medical training, [he] could not address Stephens' medical concerns." (Winston Decl. ¶ 4.) Instead, noting that Stephens' letter did not mention Ferguson specifically, Winston "asked [Ferguson] to speak with inmate Stephens to

11

address his medical concerns." (*Id.* ¶¶ 4–5.) Stephens has not provided any evidence to the contrary.[11] Instead, he rests on his conclusory allegations of retaliation, which are insufficient to establish a causal link between his letter to Winston and Ferguson's actions. Accordingly, the court will grant defendants' motion with regard to Lisa Ferguson.

**C. Etthan Miller**

Stephens asserts that Miller "has shown malpractice by continuing and increasing" Stephens' clindamycin even after discovering that Stephens was allergic to the medication. As stated above, however, "[n]egligence or malpractice in the provision of medical services does not constitute a claim under § 1983." *Wright*, 766 F.2d at 849. Regardless, Stephens' medical records do not indicate that his dosage of clindamycin was ever increased or that Miller was ever made aware of Stephens' alleged allergy. (Dkt. No. 23-1, at 17; Ferguson Decl. ¶ 12 ("Nurse Practitioner Etthan Miller never increased Stephens' dose of clindamycin prescribed on May 4, 2018."); Miller Decl. ¶ 4, 6 ("I never increased Stephens' does of clindamycin and did not increase Stephens' dose of clindamycin on Monday, May 12, 2018. . . . At no time during my employment at the NRVRJ was I aware that inmate Stephens had an allergic reaction to clindamycin.").) Miller could not have been deliberately indifferent of Stephens' allergy if he never knew of the alleged allergy. Accordingly, Stephens has failed to identify any material fact at issue regarding his § 1983 claim against Miller, and the court will grant summary judgment as to count two of Stephens' complaint.

**D. Superintendent Gregory Winston**

Stephens alleges that he mailed a letter to Superintendent Winston "explaining the situation with medical." When Winston received the letter, he forwarded it to Ferguson, which Stephens

---

[11] Likewise, if Stephens intended to allege that Ferguson retaliated against him for filing a lawsuit against her or her peers, his claims also fail. Notably, Stephens acknowledges that he had not filed any claims against Ferguson at the time of the alleged retaliation and never alleges that Ferguson knew of any other lawsuits filed against NRVRJ. (Pl.'s Reply Br. 5–7, Dkt. No. 37.)

12

states put him "in a hostile environment which made him a victim of retaliation." (Compl. 8–9.) Stephens further states that Winston has allowed "the malpractice and negligent actions of the medical department to continue."[12] (*Id.* at 9.) In effect, Stephens argues that by forwarding his letter to Ferguson, Winston retaliated against him. But Stephens has failed to explain how that violated any constitutional right or how it would "deter a person of ordinary firmness" from exercising such a right. Stephens' allegations do not suggest that Winston intended to retaliate against Stephens for writing his complaint letter or filing lawsuits against NRVRJ. As noted previously, both Winston and Ferguson indicated that the motivation behind Ferguson's interaction with Stephens was to ensure that a staff member with appropriate medical credentials addressed Stephens' medical concerns. Again, Stephens' bare assertions are insufficient to establish a claim of retaliation under § 1983. Accordingly, the court will grant defendants' motion as to Superintendent Gregory Winston.

**E. Patricia Boblett**

Stephens argues that Boblett has retaliated against him by failing to return his copy of a "Prison Trust Account Report" provided by the court. In its entirety, Stephens' claim against Boblett states,

> (1) From the 7th to 22nd of August, Defendant has refused to return the original 'Prison Trust Account Report,' provided by this Court. Four request forms and tried a informal grievance without any success. (2) I feel Defendant is deliberately retaliating against me since I already have a civil action pending (7:18cv172). She is trying to hinder any legal proceedings/deadlines I may have.

(First Am. Compl. 1.) Even under the lesser standard of Rule 12(b)(6), Stephens has failed to state a claim.

---

[12] If this allegation is intended to assert a claim against Winston in his supervisory role at NRVRJ, Stephens' claim fails for the reasons stated above. *See supra* n.9.

13

Stephens' concern apparently stems from the fact that information specific to his case was included on the form. (*See* Pl.'s Reply to Bowman's Mot. ¶ 2, Dkt. No. 49.) Because Boblett did not return the form, Stephens reasons that Boblett must therefore have intentionally withheld the form in response to Stephens' lawsuit against Boblett's peers. But such a conclusion does not follow simply because Boblett failed to return Stephens' original document. Moreover, Stephens never alleges that Boblett's actions had any adverse effect on his ability to pursue his claims. In fact, the evidence suggests that Boblett completed the form and filed it appropriately, effectively aiding Stephens in initiating his lawsuit. (*See* Boblett Decl., Dkt. No. 23-7.) Accordingly, the court will grant defendants' motion as to Patricia Boblett.

**F. Deputy Superintendent John Bowman**

Similarly, Stephens claims Bowman retaliated against him for filing a lawsuit against NRVRJ employees. However, his sole allegation against Bowman is that Bowman "threaten[ed] Plaintiff with disciplinary actions if he mentioned the [Prison Trust Account Report] again." (Second Am. Compl. 2.) In his declaration, Bowman clarifies that his threat was in response to several inquiries about Stephens' trust account report. Bowman states that Stephens became disrespectful, writing that Boblett "was not 'very intelligible' and did not 'comprehend what property is.'" (Bowman Decl. ¶ 6, Dkt. No. 39-1.) Thus, Bowman intervened "to stop [Stephens] from continuing to harass Ms. Boblett." (*Id.* ¶ 7.) Stephens has not pointed to any evidence suggesting otherwise. Because Stephens has failed to support his bare assertion that Bowman acted with a retaliatory motive, Stephens' claim against Bowman under § 1983 fails as a matter of law. The court will therefore grant Bowman's motion.

## III.  CONCLUSION

For the foregoing reasons, the court will grant defendants' motions to dismiss or for summary judgment in their entirety and will therefore deny defendants' motions for protective orders as moot.  A separate order will be entered.

Entered: February 11, 2020.


*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge